UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JERRI ZIMMER,                                   Case No. 19-CV-1693 (PJS/DTS)

        Plaintiff,

v.                                              ORDER

DELTA FAMILY-CARE DISABILITY AND
SURVIVORSHIP PLAN,

        Defendant.

---

Alesia R. Strand and Thomas J. Beedem, III, BEEDEM LAW OFFICE, for plaintiff.

Jason R. Carruthers and John T. McDonald, THOMPSON HINE LLP, and William D. Hittler, NILAN JOHNSON LEWIS PA, for defendant.

Plaintiff Jerri Zimmer brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), claiming that defendant Delta Family-Care Disability and Survivorship Plan ("the Plan") wrongly terminated her long-term-disability ("LTD") benefits. This matter is before the Court on the parties' cross-motions for summary judgment. ECF Nos. 34, 38. For the reasons that follow, the Plan's motion is granted, and Zimmer's is denied.

# I. BACKGROUND

## A. Medical and Employment History

Zimmer has a long history of mental illness, dating back more than 25 years.[1]  *See* Administrative Record ("AR") 2332–35, 4602–03.  Zimmer's diagnoses have included generalized anxiety disorder, panic disorder, obsessive-compulsive disorder ("OCD"), and chronic depression.  *See* AR 2334–37, 2626.  Zimmer has been treated by a number of mental-health providers, including her longtime psychologist Dr. Kim Baldwin, whom Zimmer has been seeing for almost 25 years.  AR 0011, 2332–35.  Zimmer's mental-health providers have long recommended that she use medications to manage her conditions, but Zimmer has refused, citing a phobia about taking medications. *See* AR 0011–12, 2334.

Zimmer started working for Delta Air Lines, Inc. ("Delta") in 1997, performing billing and accounting services.[2]  AR 2333.  In 1999, Zimmer began working as a customer-service agent, and she remained in that job until 2014 or 2015, when she was transferred to a new position as a customer-care specialist (also referred to as a

---

[1]Zimmer also suffers from a number of physical problems, but at oral argument Zimmer's counsel clarified that Zimmer is challenging only the Plan's refusal to pay long-term disability benefits on the basis of her mental-health problems.

[2]Zimmer was originally employed by Northwest Airlines, Inc., which later merged with Delta.  *See* AR 2333.

"reservation agent" or "reservationist").[3]  Customer-care specialists are responsible for responding to and resolving customer complaints and for entering customer data into Delta's database.  AR 1694–95.  Zimmer felt that the training and support that she received in this new position were inadequate, and the fact that she was expected to do a job for which she was not adequately trained or supported caused Zimmer to experience stress and anxiety.  AR 0013, 2333.  Zimmer stopped working due to that stress and anxiety in October 2016.  AR 2333.

In addition to her employment with Delta, Zimmer also worked—and continues to work—about 20 hours per week for her brother's company.  AR 2333.  Zimmer is responsible for billing, accounting, and payroll.  AR 2333.  She ensures the accuracy of records, prepares reports upon request, and works on "last minute projects" on an as-needed basis.  AR 2030.  Zimmer does most of this work from her home and reports directly to her brother and to the company's general manager.  AR 2030.  Zimmer began working for her brother in 2007, and, as noted, she has continued with this part-time employment since leaving Delta in 2016.  AR 2333, 4604.

### B.  Disability Benefit Claims

As a Delta employee, Zimmer had short- and long-term disability coverage under the Plan, which is an employee welfare benefit plan subject to ERISA.  *See* ECF

---

[3]*See* AR 2333 (stating that Zimmer was transferred to her new position in 2014); AR 4603 (stating that Zimmer was transferred in 2015).

No. 40-1 at 3.  The Plan grants the plan administrator discretionary authority to make benefit determinations, and the plan administrator has delegated that authority to Sedgwick Claims Management Services ("Sedgwick").  *Id.* at 52–53, 279–80, 288.

Zimmer first applied for short-term disability ("STD") benefits.  Her application was approved, and she was paid STD benefits for the maximum period allowed under the Plan.  AR 3950.  Two weeks before her STD benefits were set to expire, Zimmer applied for LTD benefits.  AR 2345–46.  In a letter dated April 12, 2017, Sedgwick notified Zimmer that her claim for LTD benefits had been approved through May 31, 2017.  AR 2468.  The letter further stated that Zimmer's "eligibility for LTD benefits" would be "periodically review[ed]" and that "[t]he next scheduled review" would occur around May 31, 2017.  AR 2468.

Sedgwick's letter also summarized the definition of "disability" under the Plan: For the first six months of the disability period (which is the only period at issue for purposes of the parties' cross-motions), a claimant is "disabled" if she is "unable to perform [her] customary occupation" as a result of a demonstrable injury or disease. AR 2468; *see also* ECF No. 40-1 at 21.  A claimant's "customary occupation" is the "type of work" the claimant engaged in before taking disability leave.  ECF No. 40-1 at 21.

As part of the "scheduled review" mentioned in Sedgwick's initial approval-of-benefits letter, Zimmer underwent an independent psychological evaluation conducted

-4-

by Dr. Gregg Eichenfield, a psychologist.  Dr. Eichenfield reported that Zimmer is

"depressed," suffers from "severe, underlying anxiety," and presents symptoms that

"reflect obsessive thinking and possible Obsessive Compulsive Disorder."  AR 2336–37.

Dr. Eichenfield concluded, however, that no occupational restrictions were necessitated

by Zimmer's condition.  AR 2338.  Dr. Eichenfield cited the fact that Zimmer had no

difficulty performing her duties for her brother's company, and that Zimmer's

purported inability to return to work for Delta was based on what she perceived as a

lack of training and a stressful work environment, rather than her inability to perform

any work-related task.  AR 2338.

On May 9, 2017, Sedgwick denied Zimmer's claim for LTD benefits from June 1,

2017 forward, citing Dr. Eichenfield's report in support of its conclusion that Zimmer

was no longer "disabled" within the meaning of the Plan.[4]  AR 2453.

---

[4]Zimmer argues that the Plan abused its discretion in denying continued LTD
benefits because the initial denial-of-benefits letter failed to consider the medical
evidence in the record, and instead relied solely on Dr. Eichenfield's report.  But
"[b]ecause exhaustion of an ERISA plan's appeal procedures serves many important
purposes, the reviewing court reviews the claim administrator's final decision to deny a
claim, rather than the initial denial that was reconsidered during the internal appeal."
*Whitley v. Standard Ins. Co.*, 815 F.3d 1134, 1140–41 (8th Cir. 2016) (citation and quotation
marks omitted).

1.  First Appeal

Zimmer filed her first appeal of Sedgwick's adverse benefits determination on November 2, 2017.  AR 2315–20.  In support of her appeal, Zimmer submitted medical records and letters from her treating physicians, who opined that Zimmer was disabled and unable to return to work.  *See, e.g.*, AR 3063–64, 3077–79.  To assist in evaluating Zimmer's first appeal, Sedgwick retained a slate of independent physicians to review Zimmer's medical records, including Dr. Patrick Young (a psychiatrist).  Dr. Young reviewed Zimmer's medical records and found "no evidence that she [is] unable to work" in her customary occupation.  AR 2010.  Dr. Young found Zimmer's symptoms to be "mild to moderate" and observed that Zimmer's "memory[,] concentration and cognition were grossly intact."  AR 2010.  Dr. Young acknowledged that Dr. Baldwin (Zimmer's longtime psychologist) believed that Zimmer was disabled, but found that Dr. Baldwin's opinion was not supported by the medical evidence.  AR 2010.

On December 28, 2017, Sedgwick upheld its previous decision to terminate Zimmer's LTD benefits, concluding that Zimmer's "medical records did not reveal objective, clinical medical evidence substantiating a physical or psychological impairment that would restrict or limit [Zimmer's] functionality or preclude her from performing her own customary occupation as defined under the Plan."  AR 2664.

2.  Second Appeal

Zimmer filed a second appeal on March 27, 2018, and submitted additional medical records and correspondence from her treating physicians.[5]  To assist in evaluating Zimmer's second appeal, Sedgwick retained a new slate of independent medical reviewers, including Dr. Hope Beatte (a psychologist).  Dr. Beatte found that although Zimmer's records indicated a "longstanding issue with anxiety," the records did not suggest "an acute condition preventing working."  AR 0052.  Dr. Beatte further noted that Zimmer had refused to take the medications recommended by her providers, and that there had been no escalation of care, which one would expect to see if Zimmer truly suffered from a debilitating condition.  AR 0052.  Dr. Beatte updated her report three times as Zimmer continued to submit additional medical records and letters from her treating physicians.  AR 4581–89.  In each instance, Dr. Beatte explained that the new information did not alter her conclusion that Zimmer is not functionally impaired.  AR 4581–89.

---

[5]*See* AR 2598–2602 (Zimmer's second appeal); AR 2626–33 (Dr. Carrie Kern, family practice physician, outlining Zimmer's limitations and impairments and opining that Zimmer is "unable to work in reservation area due to chronic anxiety"); AR 2617–19 (Dr. Kim Baldwin, psychologist, providing results of psychiatric testing and opining that Zimmer "is unable to complete the reservationist functions because of anxiety related to feelings of incompetence"); AR 0010 (Dr. Emily Sander, psychologist, opining that Zimmer has a "functional impairment that limits her capacity to work"); AR 2363 (Dr. Matthew Eich, M.D., opining that Zimmer "is not capable of returning to a sedentary work position due to her multiple orthopedic problems, as well as her anxiety and medical problems").

Before issuing a final decision on Zimmer's second appeal, Sedgwick retained yet another medical expert—Dr. Thomas Gratzer, a psychiatrist—to examine Zimmer and review her medical records.  Dr. Gratzer examined Zimmer on January 23, 2019, and concluded, like Drs. Eichenfield, Young, and Beatte before him, that the medical evidence did not support a finding of functional impairment.[6]  AR 4601, 4611–12.  Dr. Gratzer's report noted Zimmer's "longstanding psychiatric difficulties," including anxiety, panic disorder, OCD, and chronic depression.  AR 4602, 4611.  Dr. Gratzer also acknowledged that Zimmer became "unable to do her job when she was reassigned from customer service to a reservation agent," as Zimmer felt that she was not "properly supported."  AR 4611.  Dr. Gratzer concluded, however, that Zimmer's "inability to do her job is separate from a psychiatric impairment."  AR 4611.  During the course of Dr. Gratzer's in-person examination, Zimmer "present[ed] with a normal mental status exam," presented no "evidence of acute depression or acute anxiety," and

_____

[6]Zimmer argues that Sedgwick had an obligation to identify the evidence that it felt was missing from the record, and that Sedgwick's failure to do so was an abuse of discretion.  *See* ECF No. 36 at 27.  But Sedgwick did not deny Zimmer's claim because it found that the record lacked information; rather, Sedgwick concluded, based on the evidence in the record, that Zimmer was not functionally impaired.  *See McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 925 (8th Cir. 2004) ("It is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence.").  Sedgwick was not required to identify some hypothetical evidence that, if it *had* appeared in the record, might have altered its conclusion.

-8-

did not present symptoms indicative of a disabling condition.  AR 4611.  Dr. Gratzer

thus concluded that Zimmer was not functionally impaired.

On April 15, 2019, Sedgwick denied Zimmer's second appeal and upheld its

previous denial of LTD benefits.  AR 4549–57.  Echoing the conclusions of its four

independent medical reviewers, Sedgwick found that Zimmer's inability to perform her

duties at Delta was due to inadequate training and workplace-specific stressors, rather

than due to a psychiatric impairment.  AR 4555–56.  In support, Sedgwick cited the lack

of medical evidence substantiating any functional impairment, the fact that Zimmer

expressed a willingness to return to her previous job at Delta as a customer-service

agent, and the fact that Zimmer reported no difficulty performing her half-time job as a

bookkeeper for her brother's company.  AR 4555–56.  Upon concluding that "there are

no functional limitations adversely affecting [Zimmer's] ability to perform the regular

unrestricted duties of her occupation from June 1, 2017 through present," Sedgwick

issued its final denial of Zimmer's claim for continued LTD benefits.  AR 4557.

Having exhausted the internal-review process, Zimmer filed this lawsuit alleging that the Plan abused its discretion in denying her claim.[7]  Both parties now move for summary judgment.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is "material" only if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor."  *Id.* at 225.

### B.  Denial of LTD Benefits

---

[7]Section 13.16 of the Plan states that "[t]he Plan and all provisions thereof shall be governed by the laws of the State of Georgia, to the extent not preempted by ERISA.  All legal disputes shall be resolved by reference to the law of the Eleventh Circuit regardless of where the case is filed."  ECF No. 40-1 at 58–59.  Both parties have cited primarily Eighth Circuit case law in their briefing, and counsel for the Plan stated at oral argument that it does not object to the application of Eighth Circuit rather than Eleventh Circuit case law in resolving the parties' summary-judgment motions.  Accordingly, the Court applies Eighth Circuit case law in resolving this dispute.  *See Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019) ("[C]hoice of law issues may be waived or forfeited by declining to assert them in litigation.").

"Where, as here, an ERISA-qualified plan grants the plan administrator the discretion to determine whether a claimant is eligible for benefits, review of the administrator's decision is for an abuse of discretion."[8]  *Zaeske v. Liberty Life Assurance Co.*, 901 F.3d 944, 948 (8th Cir. 2018) (citation and quotation marks omitted); *see also* ECF No. 40-1 at 52–53.  Under the abuse-of-discretion standard, the Court "must uphold [a plan administrator's] decision so long as it is based on a reasonable interpretation of the Plan and is supported by substantial evidence."  *Hampton v. Reliance Standard Life Ins. Co.*, 769 F.3d 597, 600 (8th Cir. 2014).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 924 (8th Cir. 2004) (citation and quotation marks omitted).  "If substantial evidence supports the decision, it should not be disturbed even if a different, reasonable interpretation could have been made."  *Id.*

The Court finds that the decision to deny Zimmer's claim for continued LTD benefits was supported by substantial evidence.

---

[8]Both parties agree that the abuse-of-discretion standard applies, and neither party argues that the standard of review should be adjusted to account for any procedural irregularity.  *See Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 813 (8th Cir. 2006) (explaining that "the application of a standard of review less deferential than the ordinary abuse of discretion standard" is appropriate where the plan administrator's decision involves a "procedural irregularity," such as "a conflict of interest" or actions taken dishonestly or from an improper motive, or where a decision is rendered "without reflection or judgment").

First, Sedgwick's conclusion that Zimmer was unable to perform her job because of a lack of training, support, and feedback—rather than because of a mental impairment—was reasonable and supported by substantial evidence. Indeed, Zimmer herself cited inadequate training and job support as the reasons why she could not return to work in her interview with Dr. Eichenfield.[9] Dr. Baldwin, Zimmer's longtime psychologist, reported the same.[10] Sedgwick reasonably construed the Plan—which defines being "disabled" as "being unable to engage in an Employee's customary occupation *as a result of a demonstrable injury or disease*"—and reasonably concluded that Zimmer's inability to work as a result of *inadequate training and support* did not entitle Zimmer to further LTD benefits. ECF No. 41-1 at 21 (emphasis added). Zimmer's treating physicians strenuously resist that conclusion and argue that Zimmer's training and support were inadequate *because* of her debilitating anxiety. But Sedgwick's contrary conclusion, which is firmly grounded on the opinions of the independent reviewers, is nevertheless reasonable. *See Zaeske*, 901 F.3d at 950 ("As a general rule, a

---

[9]AR 2333 (Dr. Eichenfield's summary of Zimmer's employment history).

[10]AR 0013 (August 28, 2018 letter from Dr. Baldwin stating that "[Zimmer] was unable to complete the reservationist functions at Delta because of anxiety related to feelings of incompetence due to inadequate training, inadequate real time job support, inadequate time to perform work tasks, unmitigated pressure to sell/promote without adequate confidence in the products and services, [and] absence of feedback regarding quality of work performance"); AR 1913 (February 28, 2018 letter from Dr. Baldwin stating the same).

plan administrator has discretion to choose between two reliable but conflicting medical opinions.").

Second, the consensus of the four independent medical experts (two psychiatrists and two psychologists) who examined Zimmer, her medical records, or both, was that although Zimmer was accurately diagnosed with anxiety, panic disorder, and depression, there is no indication that Zimmer's condition is debilitating. After all, Zimmer's medical records show that she has suffered from these same mental-health problems for *decades*, and yet she has been able to function both at work (whether employed full-time or part-time) and at home. Finding no clear evidence of either a substantial decline in Zimmer's condition or an escalation in her treatment, the four independent experts agreed that Zimmer was not functionally impaired. Sedgwick reasonably relied on those opinions in denying continued LTD benefits, and the Court finds that Sedgwick's decision was supported by substantial evidence. *See id*. at 948–49 (reversing lower court's finding that plan administrator's reviewing physicians' reports were "unreliable," because although "another interpretation of [the claimant's] medical records could support his eligibility for benefits, the assessments of [the reviewing physicians] were not outside the range of reasonableness, and it was not an abuse of discretion . . . to rely on them").

Zimmer argues that notwithstanding this record evidence, the Plan abused its discretion in denying her further LTD benefits because (1) Sedgwick ignored or improperly discounted the opinions of Zimmer's treating physicians, and (2) Sedgwick's denial of LTD benefits does not follow logically from the evidence in the record.  The Court disagrees on both points.

First, Zimmer's argument that Sedgwick ignored the opinions of her treating physicians is belied by the record, which makes clear that both Sedgwick and the independent medical reviewers retained by Sedgwick considered the opinions of Zimmer's treating physicians.  *See* AR 4549–57 (discussing Zimmer's medical records and the opinions of Zimmer's treating physicians in affirming denial of LTD benefits following second appeal); *see also* AR 2010 (describing Dr. Young's reasons for disagreeing with Dr. Baldwin); AR 0052, 0057, 4586 (describing Dr. Beatte's reasons for declining to adopt the medical opinions of Zimmer's treating physicians).  Sedgwick and the reviewers did not *ignore* these opinions, but instead *disagreed* with them based on an independent assessment of the medical evidence.  Doing so was not an abuse of discretion.  *See Delta Family-Care Disability & Survivorship Plan v. Marshall*, 258 F.3d 834, 843 (8th Cir. 2001) (rejecting lower court's finding "that the Plan 'disregarded' the reports of [the claimant's] treating physicians" where "the Plan's final decision letter clearly demonstrates that the Plan did consider those reports").

-14-

Zimmer argues that even if Sedgwick did not completely ignore the opinions of Zimmer's treating physicians, it nonetheless failed to give them sufficient weight. But "plan administrators are not obliged to accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). Where, as here, "there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support denial." *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006); *see also Marshall*, 258 F.3d at 843 ("Where the record reflects conflicting medical opinions, the plan administrator does not abuse its discretion in finding the employee not to be disabled."). Further, courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker*, 538 U.S. at 834.

Finally, Sedgwick's conclusion that Zimmer is not disabled was logical and supported by record evidence. Zimmer cites *Willcox v. Liberty Life Assurance Co. of Boston* for the proposition that a plan administrator is not "free to accept" a medical reviewer's report "without considering whether its conclusions follow logically from the underlying medical evidence." 552 F.3d 693, 700–01 (8th Cir. 2009) (citation and quotation marks omitted). In *Willcox*, the Eighth Circuit upheld the district court's

grant of summary judgment to the claimant because the plan administrator's denial of benefits was based on inaccurate, "cursory" reports that "mischaracterized the medical evidence" and reached "demonstrably incorrect conclusion[s]" regarding the claimant's alleged disability. *Id.* at 701–03. The Eighth Circuit concluded that the plan administrator abused its discretion in "combing the record for evidence in its favor and abandoning its review upon discovering 'more than a scintilla' of such evidence." *Id.* at 702 (citation omitted).

This case is nothing like *Willcox*. Sedgwick was very thorough in considering Zimmer's application for LTD benefits; after all, Sedgwick hired four independent experts to examine Zimmer, review Zimmer's medical records, or both. Zimmer has not identified anything either in the reports of the medical reviewers or in Sedgwick's final denial-of-benefits letter that is "demonstrably incorrect." *See Petroske v. Kohler Co.*, 854 F. Supp. 2d 669, 688 (D. Minn. 2012) (distinguishing *Willcox* on similar grounds). Zimmer argues that the reviewers' conclusion that she was not functionally impaired was "nonsensical" given that the medical reviewers "agreed with [Zimmer's] mental health diagnoses." ECF No. 36 at 16. But as the Plan points out, a *diagnosis* is not the

same thing as a *disability*.[11]  Some people diagnosed with depression function just fine at work; others are completely debilitated.

Ultimately, the question before the Court is not whether Zimmer continued to be "disabled" within the meaning of the Plan after May 31, 2017.  The question before the Court is whether the evidence that Sedgwick relied on in denying LTD benefits is "'overwhelmed by contrary evidence.'"  *Whitley v. Standard Ins. Co.*, 815 F.3d 1134, 1142 (8th Cir. 2016) (citation omitted).  To be sure, there is conflicting evidence in the record, as is usually the case when a plan administrator denies LTD benefits.  But Sedgwick's decision is supported by substantial evidence, and this Court cannot disturb that decision under the deferential abuse-of-discretion standard.

### C.  Failure to Timely Produce Administrative Record

Finally, Zimmer argues in her brief that she is entitled to damages under 29 U.S.C. § 1132(c)(1) because the Plan failed to produce the administrative record within the statutory time frame.  But Zimmer's complaint does not allege that the Plan failed to timely produce the administrative record, nor does it allege entitlement to damages based on that failure.  Zimmer's catch-all request for "other equitable relief and

---

[11]*See Jordan v. Northrop Grumman Corp. v. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004) ("That a person has a true medical diagnosis does not by itself establish disability.  Medical treatises list medical conditions from amblyopia to zoolognia that do not necessarily prevent people from working."), *overruled on other grounds as recognized by Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 673–74 (9th Cir. 2011).

penalties pursuant to ERISA" is not, as Zimmer argues, sufficient to put the Plan on notice that Zimmer was accusing it of violating § 1332(c)(1).  ECF No. 1 at 3.  Zimmer's request for statutory damages is therefore denied.  *See WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 993 (8th Cir. 2018).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for summary judgment [ECF No. 34] is DENIED.

2. Defendant's motion for summary judgment [ECF No. 38] is GRANTED.

3. Plaintiff's complaint [ECF No. 1] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  February 5, 2021

Patrick J. Schiltz
United States District Judge